**In the Matter of BOCA DEVELOPMENT ASSOCIATES, a/k/a Boca Development Associates, Limited, A New York Limited Partnership, Debtor.**

**Bankruptcy No. 81 B 20683.**

United States Bankruptcy Court, S. D. New York.

March 29, 1982.

Reich & Reich, White Plains, N. Y., for debtors.

Robinowitz, Bianchi & Cohlan, White Plains, N. Y., for Creditors' Committee.

Larry K. Nick, CPA, New York City, Unsecured Creditor.

Schatzman & Schatzman, Miami, Fla., for Theodore H. Miller, Trustee of Boca Grande Associates, III, Trust.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

A secured creditor who holds the largest obligation due from the debtor in this Chapter 11 case seeks to transfer venue of this case to the Southern District of Florida on the ground that under 28 U.S.C. § 1472 venue is improper in the Southern District of New York, or, in the alternative, that in the interest of justice and for the convenience of the parties venue should be transferred to the Southern District of Florida pursuant to 28 U.S.C. § 1475 and Bankruptcy Rule 116(b)(1).

## FINDINGS OF FACT

1. The debtor filed with this court a petition for relief under Chapter 11 of the Bankruptcy Code on November 30, 1981.

2. The debtor is a limited partnership formed under the laws of the State of New York. A Certificate of Limited Partnership was filed on April 23, 1980 in the office of the Rockland County Clerk, State of New York.

3. The limited partnership is comprised of two general partners and eleven limited partners. One of the general partners, M & A Development Corp., (M&A), is a New York Corporation, with its principal office in Rockland County, New York. The two stockholders of M&A, Arthur Kessler and Michael Scharf, both reside in Rockland County, New York. The other general partner, GMG Investment Corp., (GMG), is a Florida corporation, with its principal office located at 4701 S.W. 46th Street, Ft. Lauderdale, Florida, the same address given for the debtor's affairs in Florida. The principal shareholder of GMG is Frank Glusman, who resides in Hallandale, Florida and whose business address is 4701 S.W. 46 Street, Ft. Lauderdale, Florida. Of the eleven limited partners, six reside within the Southern District of New York, two reside in New Jersey, two reside in Long Island, New York and one resides in Florida.

4. The debtor's principal asset consists of approximately 42 acres of vacant land in Palm Beach County, which is in the Southern District of Florida. The land is zoned for agricultural purposes only. The debtor was formed with the intention of acquiring this land and developing it into a shopping center. Indeed, its agreement of limited partnership recites that the parties "desire to form a limited partnership under the laws of the State of New York ... to engage in the business of acquiring and developing real property situate in Palm Beach County, Florida ... and in connection therewith to own, develop, construct, operate and manage said real property."

Unfortunately for the debtor its projections literally and figuratively never got off the ground because the local zoning commission's approval of a zoning variance for commercial purposes was opposed by neighboring property interests, with the result that a local court reversed the approval and reinstated the agricultural limitation. That decision is now on appeal. The debtor had no intention of going into the business of farming when it raised the money to acquire the land and when it thereafter incurred the mortgage obligation of its largest secured creditor, the petitioner in this change of venue application. Accordingly, no business operations are being pursued in Florida. The only Florida implications at this time involve the zoning appeal and the relentless accrual of interest as well as principal reduction requirements. Hence, the debtor sought refuge under Chapter 11 of the Bankruptcy Code.

5. In February, 1980, the movant, Theodore H. Miller, Trustee of Boca Grande Associates III Trust, originally agreed to sell the 42 acres of vacant land in Palm Beach County, Florida, to Arthur Kessler and Michael Scharf, or their assignees. Kessler and Scharf then formed the debtor as a limited partnership for the purpose of taking over the acquisition and developing a shopping center on the premises. On May 19, 1980, Kessler and Scharf assigned their purchase contract to the debtor. The assignment was consented to by the movant, Theodore H. Miller, Trustee.

6. The debtor purchased the property from the movant Theodore H. Miller, Trustee, on May 19, 1980, for $1,000,000, with approximately $275,000 in cash and the assumption of a purchase money wrap-around mortgage of $725,000. The mortgage and mortgage note, dated May 15, 1980, were signed by Kessler and Scharf on behalf of the debtor.

7. Kessler and Scharf approached GMG to join the debtor partnership as a general partner because GMG's principal, Frank Glusman, was an experienced real estate developer in Florida, where the property was located. GMG and Frank Glusman had primary responsibility for arranging for the retention of architects and the clearing of the land site. Bills were paid with partnership checks drawn on the debtor's checking account in New York and countersigned by M&A in New York and GMG in Florida. Everything came to an early halt when the agricultural zoning restriction was reimposed. The property remains undeveloped.

8. The debtor's checking account is maintained in Rockland County, New York. Its financial books and records are located in Rockland County where Kessler and Scharf maintain their offices. The debtor's accountant, who is an unsecured creditor, maintains his office in Rockland County, New York.

9. The management of the debtor's financial affairs is directed from its New York office in Rockland County, maintained by M&A and Arthur Kessler.

10. There are 9 unsecured creditors, consisting mainly of professional firms in New York and Florida, who performed legal, accounting and architectural services in connection with the initial activities of the debtor before operations were halted. Four of the unsecured creditors have submitted affidavits in support of the retention of venue in the Southern District of New York. A fifth unsecured creditor is Frank Glusman, the principal of the debtor's general partner GMG. No unsecured creditors have voiced any venue objections.

11. Counsel for the unsecured creditors' committee had advised the court that the committee has authorized him to oppose the movant's application for transfer of venue because "the creditors have no objection to maintaining the proceedings in this Court which is closest to the base of operations of the Debtor."

12. The movant, Theodore H. Miller, Trustee, trustee of Boca Grande Associates III Trust, the debtor's largest creditor by virtue of the $750,000 wrap-around mortgage on the debtor's only asset, maintains his principal place of business within the Southern District of Florida.

13. All of the relevant documents executed by the debtor with regard to its acquisition of its Florida real estate and obligations thereunder were executed in the Southern District of Florida.

14. Based upon the foregoing facts and the absence of any current business activities in Florida, it cannot be found that it would be more convenient for the parties potential witnesses to transfer this case to the Southern District of Florida than to retain this case in the Southern District of New York.

## DISCUSSION

The issues for determination are two fold: May a New York limited partnership with a business office and checking account in the Southern District of New York, and whose sole asset consists of a fee ownership in dormant vacant real estate in the Southern District of Florida, file a Chapter 11 case in the Southern District of New York? If so, should the case nevertheless be transferred to the Southern District of Florida?

## INITIAL VENUE

The governing statute is 28 U.S.C. § 1472(1) which provides that a case may be commenced in the bankruptcy court for a district where for 180 days immediately preceding such commencement the debtor maintained a domicile, residence, principal place of business or principal assets.[1]

That the debtor's sole asset in the instant case is an unimproved parcel of real estate in the Southern District of Florida on which there is currently no activity, and that one of the debtor's general partners is a Florida corporation that undertook development activities before operations came to a halt are not decisive facts in ascertaining the proper venue for this case under 28 U.S.C. § 1472. The debtor is a New York limited partner-ship that has filed a Certificate of Limited Partnership with the office of the Clerk of Rockland County, New York, designating its principal place of business to be in Rockland County, New York, which is within the Southern District of New York. Its books and records are in the Southern District of New York and its checking account is maintained there.

*In re Marina Enterprises, Inc.*, 14 B.R. 327, 8 B.C.D. 59 (Bkrtcy.S.D.Fla.1981) is a particularly striking case in point. There the debtor was a New Jersey corporation whose only substantial asset consisted of a fee title to real estate in New Jersey. However, its corporate office was located in Hallendale in the Southern District of Florida. Its books and records were in the Southern District of Florida. Its business was conducted through lawyers in Florida, New Jersey and New York. Its efforts to obtain financing were primarily outside of the district of New Jersey in which its sole asset was located. The property was a dormant, unimproved parcel of real estate in Atlantic City, New Jersey, on which there was no present activity. The Bankruptcy Court concluded that there was no reason why the debtor should be precluded from choosing the Southern District of Florida as the venue of its Chapter 11 case under the facts in that case.

The instant case and the *Marina* case, supra, are both cases in which the debtor has a choice of venue and chooses the forum where its financial office is located rather than its principal asset forum. *In Marina*, the debtor was a corporation organized under the laws of the same state where its vacant land was located, and nevertheless the court sustained the debtor's choice of the forum where its books, records and financing were available. In this case, the debtor was organized pursuant to the laws

---

1. § 1472. Venue of cases under title 11
    Except as provided in section 1474 of this title, a case under title 11 may be commenced in the bankruptcy court for a district—
    (1) in which the domicile, residence, principal place of business, in the United States, or principal assets, in the United States, of the person or entity that is the subject of such case have been located for the 180 days immediately preceding such commencement, or for a longer portion of such 180-day period than the domicile, residence, principal place of business, in the United States, or principle assets, in the United States, of such person were located in any other district.

of New York, which is the venue of its choice as well as the place where its books and records are located and the source of its financing. This case presents a stronger basis for upholding the debtor's choice of venue than in the *Marina* case because not only does the debtor maintain its principal business office in the Southern District of New York, where its books and checking account are located, but additionally the debtor is a limited partnership organized under the laws of New York and is financed through New York sources. These facts constitute a sufficient nexus with the Southern District of New York to sustain venue in this forum in accordance with the standards prescribed in 28 U.S.C. § 1472. Therefore, the question for consideration is whether or not venue should be transferred to the Southern District of Florida, notwithstanding that venue is correct.

## DISCRETIONARY TRANSFER OF VENUE

■ Section 1475 of 28 U.S.C. codifies Bankruptcy Rule 116(b)(1)[2] and provides for a change of venue of a case that was properly commenced in accordance with the venue prerequisites of 28 U.S.C. § 1472 "in the interest of justice and for the convenience of the parties".[3]

Having determined that the Southern District of New York is a proper venue for this case, the burden then shifts to the movant to demonstrate to the court's satisfaction that it should exercise its discretion to change the debtor's chosen forum. *In re Gulf Manufacturing Corporation*, 4 B.C.D. 521 (Bkrtcy.S.D.N.Y.1978); *In re Louis Marx & Co., Inc.*, 6 B.C.D. 300, 2 C.B.C. 2nd 49 (Bkrtcy.S.D.N.Y.1980); *In re Cole Associates, Inc.*, 7 B.R. 154, 6 B.C.D. 565,

(Bkrtcy.Utah 1980). The factors that are weighed in ascertaining the most convenient forum were articulated in *Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239 at 1247 (5th Cir. 1979) as follows:

"(1) The proximity of creditors of every kind to the Court;

(2) The proximity of the bankrupt (debtor) to the Court;

(3) The proximity of the witnesses necessary to the administration of the estate;

(4) The location of the assets;

(5) The economic administration of the estate;

(6) The necessity for ancillary administration if bankruptcy should result."

In that case the debtor maintained management facilities in San Antonio, Texas where it directed its operations and processing center, located in Puerto Rico, where its principal assets were located. The Court of Appeals sustained the bankruptcy court's conclusion that the most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate; the fifth factor listed above. The Court of Appeals noted that the heart of a reorganization case is the working up of a financial plan of arrangement and that the people charged with this responsibility were the debtor's management who were located in San Antonio, where the reorganization case was commenced. Hence, the debtor's choice of forum was sustained. Similarly, in *Gulf Manufacturing Corporation*, supra, which is a case under the former Bankruptcy Act, the court gave special consideration to the element of economic and efficient adminis-

---

**2.** Rule 116—Venue and Transfer

.     .     .     .

(b) Transfer of Cases; Dismissal or Retention When Venue Improper.

(1) When Venue Proper. Although a petition is filed in accordance with subdivision (a) of this rule, the court may, after hearing on notice to the petitioner or petitioners and such other persons as it may direct, in the interest of justice and for the convenience of the parties, transfer the case to any other district. The

transfer may be ordered at or before the first meeting of creditors either on the court's own initiative or on motion of a party in interest but thereafter only on a timely motion.

**3.** § 1475. Change of venue. A bankruptcy court may transfer a case under Title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties.

tration of the estate and determined that a transfer to Florida was appropriate because the retention of the case in New York would discourage the continued interest of the Florida creditors, especially since the debtor's manufacturing facilities were in Florida, where a majority of creditors and a large percentage of the existing debt and books, records and assets were located. *In Olde Concord Associates*, 4 B.C.D. 177 (Bkrtcy.S.D.N.Y.1978), involving another pre-Code reorganization, transfer of venue was directed because none of the listed creditors were either located in New York nor consented to the New York forum, the debtor's sole asset was in Georgia, its checking account was maintained with a Georgia bank and its business activities were actively pursued in Georgia.

The cases decided under the Bankruptcy Code continue to apply the same pre-Code standards for determining whether or not the debtor's choice of venue should be sustained. In the case of *In re Cole Associates, Inc.*, supra, the bankruptcy court placed special emphasis on ascertaining whether or not a transfer of venue would promote the efficient and economic administration of the estate, and in so doing, sustained the debtor's choice of venue. In the case of *In re Hadar Leasing International Co. Inc.*, 14 B.R. 819, 7 B.C.D. 686 (D.C.S.D.N.Y.1981) the District Court sustained a transfer of venue to Ohio because the majority of the debtor's creditors who were located in Ohio, desired an Ohio venue, the debtor was incorporated in Ohio and was not licensed to do business in New York, and substantially all of the debtor's assets and business activities were in Ohio. The one factor that was singled out as having the most logical importance was that the most economic administration of the estate for the purpose of achieving a successful reorganization militated in favor of a transfer of venue to Ohio. Similarly, this court ordered a transfer of venue to Puerto Rico in *In re BSJ Tower Associates*, 11 B.R. 449, 7 B.C.D. 927, 4 C.B.C.2d 621 (Bkrtcy.S.D.N.Y.1981) because New York was simply a fortuitous tax shelter base for operations which were actively conducted in Puerto Rico and where the debtor's records, checking account, assets and all but one of its creditors were located. The only creditor who opposed a transfer of venue was a secured creditor whose status was dependent upon consequences flowing from a transaction that occurred in, and was governed by, the laws of Puerto Rico. In the case of *In re Macon Uplands Venture*, 2 B.R. 444, 5 B.C.D. 1279, 1 C.B.C.2d 385 (Bkrtcy.Md. 1980), a transfer of venue to Georgia was directed because the debtor's hotel was actively managed in Georgia and a majority of the trade creditors who would form the creditors' committee were located in Georgia. Therefore it was concluded that the reorganization case could be more conveniently administered by the court which was closest to the property and to the majority of creditors, since that court would be in the best position to meet any emergency situations that may arise. The Georgia venue was also appropriate because the debtor had previously filed a Chapter XII case under the former Bankruptcy Act in the District of Maryland which was thereafter transferred to Georgia. The debtor sought to dismiss the Chapter XII case in Georgia. However, the District Court in Georgia enjoined the debtor from further pursuing any bankruptcy action in Maryland. *In re Macon Uplands Venture*, 2 B.R. 429 (D.C.Ga.1979). The Court of Appeals for the Fifth Circuit sustained the District Court's order enjoining the debtors from filing under the Bankruptcy Code other than in Georgia. *In re Macon Uplands Venture*, 624 F.2d 26 (5th Cir. 1980). The need to meet emergency situations in the forum of the debtor's business operations was also recognized in *In re Birchminster Corp. of California*, 6 B.R. 258, 6 B.C.D. 976 (Bkrtcy.E.D.Pa.1980), where a creditors' committee successfully sought a transfer of venue to California, the state of the debtor's incorporation and the location of its books and records, and its operating assets.

In the instant case the debtor is a New York limited partnership that owns vacant land in Florida and is not presently operating any business there because of the zon-

ing restriction limiting usage to agricultural purposes. No emergency situations will develop in Florida as long as the debtor's business is dormant.

The debtor's mortgagee would prefer to have the case transferred to the Southern District of Florida where the debtor's only asset is located. The bankruptcy court in the Southern District of Florida, where the movant would have this case transferred, has ruled under similar circumstances in *In re Mariner Enterprises, Inc.*, 14 B.R. 327, 8 B.C.D. 59 (Bkrtcy.S.D.Fla.1981) that the forum where the debtor maintains its principal office and its books and records is the appropriate venue for a Chapter 11 reorganization case rather than the forum where a debtor's "dormant, unimproved parcel of real estate" is located. This court agrees that the economic administration of this estate requires a similar conclusion. The factors involving the proximity of the court to most of the creditors are not significant here, since the creditors' committee and a majority of the creditors have voiced their support in favor of the debtor's choice of venue. The location of the debtor's assets is a factor that is outweighed by the need for administration of the case in this forum, where the debtor's management and source of financing is located. That the sole objectant is a secured creditor is a fact which is not as significant if the factors which govern transfer when the debtor's chosen venue is proper persuade the court that the case should not be transferred to another forum. See *In re Distributors Warehouse, Inc.*, 1 B.R. 539, 543 (Bkrtcy.M.D.Fla.1979).

## CONCLUSIONS OF LAW

1. The debtor has established that the Southern District of New York is the appropriate venue for this Chapter 11 case, in accordance with the requirements under 28 U.S.C. § 1472.

2. The movant has failed to establish by a preponderance of the evidence that this court should exercise its discretion and transfer the venue of this case to the Southern District of Florida, in accordance with the standards delineated under 28 U.S.C.

§ 1475 because in the interest of justice and for the convenience of the parties the economic administration of this case would be better served by the retention of the venue of the debtor's choice.

3. The movant's application for a transfer of the venue of this case to the Bankruptcy Court for the Southern District of Florida is denied.

SUBMIT ORDER on notice.