**In re DEVELOPERS OF CAGUAS, INC., Debtor.**

**Bankruptcy No. 182–11971–21.**

United States Bankruptcy Court, E.D. New York.

Feb. 7, 1983.

Louis P. Rosenberg, Brooklyn, N.Y., for debtor; Richard L. Koral, Brooklyn, N.Y., of counsel.

Dunn & Zuckerman, P.C., New York City, for Chase Manhattan Bank, N.A.; Richard S. Last, New York City, of counsel.

Ernesto Gonzales Pinero, San Juan, P.R., Special Counsel for Chase Manhattan Bank in San Juan, P.R.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Before the Court is a motion to transfer the venue of this Chapter 11 proceeding from the United States Bankruptcy Court for the Eastern District of New York to the United States Bankruptcy Court for the District of Puerto Rico. The motion which was made while this Court was still operating under the stay as extended of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), will now be deemed a motion to transfer venue to the District Court for the District of Puerto Rico.

As is too often the case in bankruptcy proceedings, the facts are sparser and murkier than the Court would prefer; but, nevertheless, this Court has no doubt that Puerto Rico, and not Brooklyn, is where this case belongs.

The debtor, Developers of Caguas, Inc. ("Caguas"), is a Puerto Rican corporation. In 1964, it acquired 72,000 square meters of contiguous vacant land situated in the center of the City of Caguas in Puerto Rico. Apparently, extensive development was planned, and an engineering project contracted for in December, 1979 (Exhibit "3" to Sur-reply Affidavit in Opposition to Motion to Change Venue). However, because of problems relating to flooding, construction was not undertaken, and the land has stayed vacant and undeveloped. It is the debtor's sole asset.

Over the years, substantial monies have been borrowed with the land as collateral. According to the petition, the debtor's property is subject to a first mortgage in favor of Chase Manhattan Bank, N.A. ("Chase") in the amount of $1,220,000, and a second mortgage in the amount of $485,000, or a total of $1,705,000.

Evidently, Caguas has been dormant for many years: it ceased paying real estate taxes in 1976; discontinued payments on its first mortgage in May, 1977; and has never had an income. Its counsel says that it "conducts no business, has no income, and maintains no employees." Memorandum of Law in Opposition to Motion for Change of Venue, at 2. Holding title to the vacant Puerto Rican land appears to have been its sole *raison d'etre.*

The debtor's petition identifies the following as stockholders who each hold more than 20 percent of its corporate stock:

"Sidney Berg, Pres., 6 Grace Ave., Great Neck, New York 11201.

"Coporcion [*sic*] de Fomento de Cereb.

"Estate of Jose G. Gonzalez, Deceased, c/o Fidler, Gonzalez and Rodrigues, Esqs., Chase Manhattan Bank Bldg., Hato Rey,

P.R., GPO 3507, San Juan, Puerto Rico 00936."

Jose Gonzalez was a Puerto Rican lawyer who died in January, 1982, and respecting whom the debtor's Memorandum says:

"The debtor formerly maintained a presence in Puerto Rico through an individual named JOSE G. GONZALEZ, who was an officer of the Debtor and authorized agent and at the same time represented the CHASE MANHATTAN BANK's local subsidiary. It was through his good offices that the CHASE Bank, the moving party, cooperated for these past years."

After the death of Mr. Gonzalez, Chase began foreclosure and sale in mid-1982. However, before it could execute on its judgment, this proceeding was filed on August 3, 1982 staying automatically, pursuant to 11 U.S.C. § 362, the sale of the property.

The petition claims that the debtor has had its principal place of business in this District for the greater part of the preceding 180 days. Sidney Berg, the President of Caguas, resides in Great Neck, New York, and maintains an office there at 6 Grace Avenue, Great Neck, New York 11201. Puerto Rico has sent tax bills addressed to the debtor at that address, and Mr. Berg has received correspondence from Chase's attorney and from an engineer with respect to a contract with the debtor at that address. Up to at least November, 1979, the debtor maintained a bank account in Puerto Rico at the Chase's Puerto Rican branch, and the address on that account was 6 Grace Avenue, Great Neck, New York 11201 (Exhibit "4" to Sur-reply Affidavit in Opposition to Motion to Change Venue). The debtor also claims that it has 15 file drawers in New York containing papers respecting the company.

The petition names four unsecured creditors. Except for David Sieger & Co., a Great Neck accountant alleged to be owed $15,000, the other three creditors are all Puerto Rican residents, all of whom this Court appointed to the committee of unsecured creditors pursuant to 11 U.S.C. § 1102. At the meeting of Caguas' creditors scheduled by the Court for September 14, 1982 in Brooklyn, New York, no creditor appeared and the meeting was closed as soon as it was convened.

In 1972, 1973, and 1975, in connection with mortgages placed on the property, Caguas executed documents in which it consistently described itself as having its place of business in the City of San Juan, Puerto Rico.

On November 8, 1982, a few months after the petition was filed, Chase brought on for hearing the present motion, serving only the debtor. The only persons whose views with respect to change of venue are known to the Court is Chase (the moving party), the debtor, and Howard Ellish, the holder of the second mortgage on the debtor's real property. Mr. Ellish is a resident of Florida and opposes transfer to Puerto Rico.

## DISCUSSION

■ This motion is governed by 28 U.S.C. §§ 1472, 1475, and 1477. Elaborate discussion of the differences among them would seem to be a work of supererogation in this factual context because it appears so clear that transfer to Puerto Rico is required in the interest of justice and for the convenience of the parties.

This Chapter 11 proceeding has only one objective, which is: to stay the foreclosure sale of the debtor's sole asset—its property in Puerto Rico—until the debtor can either reach some accommodation with Chase, or itself sell the property. The statement filed by the debtor pursuant to Rule XI–2(d) of the Bankruptcy Rules of this Court states unequivocally that this is the purpose. After noticing the pendency of the foreclosure proceeding and the fact that such distress sale would result in a price less than the land's market value, the affidavit continues:

"This proceeding is designed to prevent such drastic procedure and to afford the debtor the opportunity to negotiate for either the sale of the property or to negotiate for a refinancing of the mortgage indebtedness. The second mortgagee, HOWARD ELLISH, has been consulted and approves the resort to Chapter 11

proceeding so as to make possible the sale of the property commensurate with the market value thereof and not to be sacrificed to the detriment of the rights of the other creditors."

Whether the debtor will be able to hold Chase off depends upon whether in the proceeding that Chase will inevitably have to bring to seek relief from the § 362 stay, the debtor will be able to demonstrate that Chase has adequate protection (11 U.S.C. §§ 361, 362(d)(1)). The issue of adequate protection will largely depend upon the value of the Puerto Rican property. If the value of the land substantially exceeds Chase's judgment, such cushion may constitute adequate protection. Conversely, if the land is worth less than the judgment, relief from stay is likely to be granted. Trial of the critical issue will call for expert testimony by local appraisers familiar with Puerto Rican property, and can best be decided by a court knowledgeable as to Puerto Rican conditions and able to evaluate that testimony. *Cf. In re Landmark Capital Co.*, 19 B.R. 342, 348 (Bkrtcy., S.D. N.Y.1982), aff'd sub nom. *Landmark Capital Co. v. North Central Development Co.*, 20 B.R. 220 (S.D.N.Y.1982). Requiring Puerto Rican experts to come to Brooklyn, New York to educate a Brooklyn bankruptcy judge as to the value of Puerto Rican property will impose unnecessarily great expense on Chase, and will serve neither the interest of justice, nor the convenience of the parties. Indicative of the inconvenience and expense that would be involved is the fact that Chase deemed it necessary to bring a Puerto Rican lawyer to New York for the argument of this motion and scheduled this motion to suit that lawyer's convenience.

Because the party seeking relief from stay carries the burden of proof on the issue of the equity of the debtor in the property (11 U.S.C. § 362(g)(1)), if the matter remains in this Court, Chase must either sit idly by while the debt to it remains unpaid (as has been the case since 1977), or expend the monies to bring Puerto Rican experts, and perhaps Puerto Rican lawyers, familiar with Puerto Rican property to Brooklyn. That Chase can bear the expense is no reason to impose it. Wealthy litigants deserve no less consideration than poor ones.

Should Chase be unsuccessful in lifting the stay, any subsequent proceedings would also be better conducted in Puerto Rico than in New York. Three of the four unsecured creditors, who form a majority of the creditors, live in Puerto Rico; Puerto Rican creditors cannot properly monitor a Brooklyn proceeding, as demonstrated by the total absence of creditors from the § 341 meeting; the secured creditor to whom Chase owes the most made it its loan through its Puerto Rican branch; the debtor's sole asset is in Puerto Rico; the debtor, itself, is a Puerto Rican corporation; and two of its three principal stockholders appear to be Puerto Rican residents.

■ Applying the criteria consistently recognized to be employed in determining convenience of the parties and the interest of justice, this matter is best transferred to Puerto Rico. They are: proximity of creditors of every kind to the court; proximity of the bankruptcy to the court; proximity to the court of the witnesses necessary to the administration of the estate; location of the assets; and the economic administration of the estate. *In re Landmark Capital Co., supra; In re The Valley Fair Corp.*, 16 CBC 586 (S.D.N.Y.1978); *In re Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239, 1247 (5th Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980); *In re Triton Chemical Corp.*, 46 F.Supp. 326, 329 (D.Del.1942). *Accord: In re Hadar Leasing Intern. Co., Inc.*, 14 B.R. 819 (S.D.N.Y.1981).

It may be that venue is proper in this District under 28 U.S.C. § 1472. That would depend upon whether the debtor's principal place of business was here for the greater part of the 180 days preceding the filing of its petition, which Chase disputes. Decision of that issue would require a hearing to fill out the affidavit proof now available and appears unnecessary since, assuming venue to be proper, so that the burden lies on Chase to demonstrate that transfer is warranted, the Court is satisfied that Chase has met its burden.

Each case must stand on its own facts. The decisions relied on by the debtor are

inapposite. The two most strongly pressed by the debtor involve debtors organized under the laws of the jurisdiction in which they filed for relief, a factor not present here. *In re Boca Development Associates,* 18 B.R. 648 (Bkrtcy.S.D.N.Y.1982); *In re One-Eighty Investments, Ltd.,* 18 B.R. 725 (Bkrtcy.N.D.Ill.E.D.1981).

One procedural point remains. This Court is currently operating under the Emergency Resolution adopted by the District Court for the Eastern District of New York, pursuant to an order of Chief Judge Jack B. Weinstein issued December 21, 1982 entitled *In re Jurisdiction of Bankruptcy Courts.* This Court is satisfied that under that Emergency Resolution, it enjoys the power which bankruptcy courts formerly exercised pursuant to Bankruptcy Rule 116 to transfer venue to a different district where venue was improper.

For the foregoing reasons, Chase's motion is granted.

Settle order on notice.