In re PINEHAVEN ASSOCIATES,
Debtor.

Bankruptcy No. 191–12348–353.

United States Bankruptcy Court,
E.D. New York.

Oct. 30, 1991.

Stroock & Stroock & Lavan by Bruce H. Schneider, Barbara G. Kaplan, New York City, Armstrong Allen Prewitt Gentry Johnston & Holmes by W. Rowlett Scott, Memphis, Tenn., for Sunburst Bank.

Schreiber & Associates by Jeffrey A. Schreiber, Salem, Mass., for debtor.

Thomas N. Rothschild, Brooklyn, N.Y., for Limited Partners of debtor.

## DECISION ON MOTION TO TRANSFER VENUE

JEROME FELLER, Bankruptcy Judge.

Before the Court is a motion of Sunburst Bank, the largest creditor herein, to transfer this Chapter 11 case from the United States Bankruptcy Court for the Eastern District of New York to the United States Bankruptcy Court for the Northern District of Mississippi. All other creditors who have made known to the Court their positions, support the venue transfer motion of Sunburst Bank. The motion is vehemently opposed by the Debtor. The Debtor's opposition to the motion is supported by its limited partners. Following an initial hearing, the parties, at the Court's direction, filed a joint statement reflecting both the undisputed and disputed facts deemed relevant for a determination of the transfer of venue issue. Thereafter, on August 15, 1991, an evidentiary hearing was held, and in September 1991 post-hearing submissions were filed by Sunburst Bank and the Debtor.

Based upon the facts and for reasons hereinafter set forth, we can only conclude that the transfer of this Chapter 11 case to the Northern District of Mississippi is necessary and appropriate under the "interest of justice or for the convenience of the parties" standards of 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a)(1).

### I. *Facts*

1. Pinehaven Associates ("Pinehaven" or "Debtor") commenced this Chapter 11 case on April 16, 1991 by filing a voluntary petition for reorganization ("Petition Date") in the United States Bankruptcy Court for the Eastern District of New York. Pinehaven is a New York limited partnership consisting of a corporate general partner, The Phynn Group, Inc. ("Phynn"), a New York corporation, and twenty-five limited partners. Both Pinehaven and Phynn are qualified to do business in the State of Mississippi. Alan Wolpert ("Wolpert") and Melvin Schreiber ("Schreiber") are each 50% owners of Phynn. Wolpert is president of Phynn. Wolpert and Schreiber are also co-owners of ForCap Sigma Corporation ("ForCap"), an entity with whom Pinehaven has a "management contract." Wolpert is employed by his own real estate management and consulting firm, Wolpert Associates, and Schreiber is employed by Moses & Schreiber, an accounting firm.

2. Pinehaven was formed for the purpose of owning and managing real estate. As of the Petition Date, Pinehaven's only business was the operation of a ninety-six room Best Western franchise motel in Southhaven, DeSoto County, Mississippi, which motel was acquired by Pinehaven in 1985 (the "Motel"). Southhaven is located in the northernmost portion of Mississippi,

virtually adjacent to Memphis, Tennessee. The Debtor claims ownership of the Motel buildings and improvements and the lessee's interest, by way of assignment, under a ground lease covering the land on which the Motel stands. Except for certain bank accounts incidental to the Motel's operations, the Motel is the Debtor's sole asset.

3. The business offices of Pinehaven are located at 3000 Marcus Avenue, Lake Success, Nassau County, New York, in the Eastern District of New York. Wolpert and Schreiber each maintain offices at that same address in Lake Success, as does Phynn, ForCap, Wolpert Associates and other real estate oriented ventures of Wolpert. Major decisions and overall supervision of Pinehaven's affairs are made through the Debtor's offices in Lake Success. Pinehaven, Phynn and ForCap have no employees. The business affairs of Pinehaven, to the extent they are conducted in the Eastern District of New York, are *de facto* carried on, in the main, by Wolpert and Wolpert Associates. Wolpert Associates has some five employees, consisting of Wolpert and his wife, a secretary and two administrative assistants who perform bookkeeping services. Wolpert is a resident of the Eastern District of New York. His home is in Nassau County, specifically Roslyn, New York, in relatively close proximity to his Lake Success business offices.

4. Sunburst Bank ("Sunburst") is a Mississippi state bank with its principal offices in Granada, Mississippi and branch offices in Southhaven, Mississippi. The Motel and Pinehaven's interest in the ground lease are encumbered by a 1987 deed of trust, constituting a first mortgage position, in favor of Sunburst that secures a 1987 loan in the amount of $2,030,000 made by Sunburst to Western Inns, Inc. ("Western Inns"), a Texas corporation from which Pinehaven earlier acquired the Motel. The deed of trust in favor of Sunburst was executed by Pinehaven, Western Inns and Wilkins–Parnell, a Texas general partnership and affiliate of Western Inns, from whom Pinehaven leased the land underlying the Motel. The Sunburst loan represents by far the largest claim in this Chapter 11 case. Monies generated from Motel

operations were hoped to be sufficient to service the Sunburst loan and apparently the Sunburst loan was serviced with little difficulty until a new Comfort Inn opened adjacent to the Motel in late 1989. The last payment on the loan was received by Sunburst on August 28, 1990. One-half of the payment due on September 1, 1990 was made and no subsequent payment has been tendered. Sunburst then accelerated the loan and commenced a nonjudicial foreclosure under the trustee's power of sale provisions contained in the deed of trust. A sale was scheduled for April 18, 1991. In connection with foreclosure, Sunburst filed a state court receivership proceeding against Pinehaven, among others, in the Chancery Court of DeSoto County, Mississippi. By virtue of 11 U.S.C. § 362, the foreclosure and receivership proceeding was automatically stayed by Pinehaven's Chapter 11 filing on April 16, 1991.

5. Sunburst is the named insured for the amount of $2,030,000 under an unexpired Mortgagee's Policy of Title Insurance issued by First American Title Insurance Company. The title insurance covers the real estate upon which the Motel is located.

6. In addition to the two million plus deed of trust held by Sunburst, Pinehaven executed and delivered a wrap-around mortgage to Western Inns, securing an indebtedness of approximately $400,000 above the Sunburst indebtedness. The wrap mortgage was assigned to Tennessee Bank and Trust Company, a Tennessee bank with offices in Memphis, Tennessee. There also appears to be another mortgage of record, this one in favor of the Jackson Exchange Bank and Trust Company ("Jackson Bank"), an institution located in Jackson, Missouri. The validity of this third mortgage is unknown at this time. The Debtor asserts that the Jackson Bank merely holds an assignment of the Wilkins–Parnell ground lease, not a third mortgage position encumbering the Motel.

7. Troy Parnell ("Parnell"), directly or indirectly, asserts ownership of the land underlying the Motel which is leased to Pinehaven. He is one of the partners of Wilkins–Parnell. A recent communication

to this Court by Parnell (letter dated July 9, 1991) indicated that Landholders, Inc., an entity of which he is a principal, owns the land underlying the Motel. Parnell is also a principal of Select Mortgage, Inc. Another recent communication to this Court (a second letter date July 9, 1991) indicates that Select Mortgage, Inc. owns the wrap mortgage, securing indebtedness above the Sunburst indebtedness. As such, Parnell would hold the second largest claim in this Chapter 11 case. Pinehaven, in turn, may well have substantial claims against Parnell and/or his affiliate entities. Furthermore, apart from lessor status, Parnell looms important in Pinehaven's Chapter 11 case as a result of his informally allowing usage by the Motel of certain parking space for trucks. This land is not covered by the lease or Sunburst's title insurance. Parnell is a debtor in a bankruptcy case currently pending in the Western District of Arkansas. Parnell and his entities support transfer to the Northern District of Mississippi. They state that they lack the funds to participate in the Eastern District of New York, but would be able to participate should the case be transferred to closer Mississippi.

8. Wolpert is in the business of real estate investment, acquisition, sale, management and operation of numerous properties, including shopping centers, hotels, motels, residential apartment buildings, and office buildings throughout the United States. He has been in this business for more than twenty-five years and holds interests in various corporations and other entities that own, operate and manage diverse real estate ventures. In addition to the Motel, Wolpert and Schreiber have interests in corporate general partners of limited partnerships that own i) a Best Western motel in Covington, Tennessee, near Memphis; ii) a Best Western motel in Millington, Tennessee, near Memphis; iii) a Best Western motel in Fayetteville, Arkansas and; iv) a Best Western motel in Pine Bluff, Arkansas. Wolpert and Schreiber also have interests together in an Oklahoma shopping center, Ohio shopping center, and Syracuse, New York garden apartments. Wolpert has interests in Florida motel properties, a Louisiana shopping center, properties in New York City and the State of Michigan. Additionally, Wolpert has various real estate consulting commitments. In consequence of his investments in and management of geographically dispersed properties, Wolpert is currently or has been involved in judicial proceedings in various jurisdictions, including Florida, Louisiana and Arkansas.

9. Day-to-day management and operation of the Motel are conducted by a local management firm. Pursuant to a management agreement, dated March 1, 1991, the Motel is run by Hotel Management, Inc., a company affiliated with Wright Investment Properties (collectively "Wright").[1] Wright maintains its offices in Germantown, Tennessee, a suburb of Memphis. In addition to the Motel, Wright is the manager of four other Best Western motels; Covington, Tennessee, Millington, Tennessee, Fayetteville, Arkansas and Pine Bluff, Arkansas, in which Wolpert and Schreiber, as indicated above, have interests through corporate general partners.

10. The Wright management agreement describes, in part, the general responsibilities of the Motel's local manager as follows:

> Manager is hereby charged with the sole and exclusive right, subject to [the Debtor's] approval, to supervise and direct the management and operation of the Motel, and shall provide [the Debtor] with the services customarily provided for in such instances, and shall, do and perform any and all things reasonably necessary for the rental, maintenance, operation and service of the Motel. It shall be the duty of Manager at all times during the term of this Agreement to use, operate and maintain the Motel according to the standards requested and approved by [the

---

1. For a substantial period prior to March 1991, day-to-day Motel operations were the responsibility of Western Inns Management, Inc., another Parnell entity affiliated with the seller of the Motel, under a management lease agreement. This agreement was terminated effective December 31, 1990.

Debtor] but in no event less than the standards required by any franchise license agreement pertaining to the Motel.

Wright is responsible for the hiring, firing, training, work assignments, compensation and other benefits of all personnel working at the Motel. All Motel personnel are Wright employees and not employees of the Debtor. Wright pays Motel operating expenses from local bank accounts maintained at the Cordova Bank and Trust Company in Memphis, Tennessee and in the People's Bank in Southhaven, Mississippi.[2] Wright is responsible for the maintenance of the Motel's books and records. The books and records, under the Wright management agreement, are to be kept "at all times either at the Motel or at the principal office of [Wright]".[3] Wright selects and negotiates, in the ordinary course of business, with Motel suppliers and arranges for Motel repairs. Wright prepares, in the first instance, annual budgets for estimated operating income and expenses and for capital expenditures for the Motel. It is Wright who has prepared all the monthly operating reports filed by the Debtor with this Court since the Petition Date.

11. Although management of the Motel is subject to the Debtor's overall direction, approval and guidance, virtually all of the Motel's customary and ordinary operations have been delegated to Wright. Oversight of Motel operations and more important decisions or policy determinations are made by the Debtor. Wolpert, who describes himself as a "one man show," carries the ball on behalf of the Debtor in all its affairs. Wolpert receives from Wright on a regular and frequent basis written financial and other reports which he reviews, questions from time to time, and offers brief comments in writing.[4] Telephonic contact between Wolpert and Wright also occurs on a regular basis. It is Wolpert's practice to visit the Motel about once a month, at which time he also visits the motels in nearby Millington and Covington, Tennessee. Wolpert's extensive and geographically dispersed businesses and property investments make him a frequent traveler. Wolpert estimates that, on the average, he spends approximately one-third of his time away from New York on business. In sum, it is clear that the amount of time expended by Wolpert on this Debtor's affairs is necessarily relatively modest.

12. Trade creditors of the Debtor are some twelve in number, holding claims aggregating approximately $10,000. The trade creditors are located predominantly in the local Southhaven–Memphis area, as would be expected in a business that operates a Motel in Southhaven, Mississippi. Tax creditors are local taxing authorities asserting claims of approximately $25,600. These local taxing authorities support transfer of this case to the Northern District of Mississippi.

13. The Debtor, as indicated, has twenty-five limited partners. They all reside in or near the New York metropolitan area.[5] These limited partners are the only parties other than the Debtor, that insofar as this Court is aware, oppose transfer to the Northern District of Mississippi. The Debtor concedes that the Motel is worth less than the amount of the Sunburst deed

2. The Debtor also maintains an account in the Eastern District of New York at the First National Bank of Long Island. This account is used strictly for excess cash and for investment.

3. Whether the books and records are kept at the Motel in Southhaven, Mississippi or at Wright's office in Germantown, Tennessee, is at the Debtor's option. In any event, the Debtor retains "the right and privilege of examining [the Motel's] books and records at any reasonable time." Periodically, Wright transmits financial records to the Debtor's offices at Lake Success, New York for, among other reasons, accounting and tax return purposes. These latter functions are performed by Schreiber's accounting firm, Moses and Schreiber, in New York.

4. These reports, and Wolpert's review thereof, are not focused specifically on the Motel, but relate to *all* five Best Western motels that Wright manages for Wolpert and Schreiber.

5. For reasons never satisfactorily explained, the Debtor lists its limited partners as unsecured creditors with unliquidated claims of $0.00. As limited partners, they are statutorily defined as equity security holders and not creditors. 11 U.S.C. § 101(16)(B) and § 101(17).

of trust.[6] Accordingly, the legally cognizable interest of the limited partners in this Chapter 11 case is dubious.

## II. *Discussion*

### A. Generally

■ The term "venue" refers to locality, i.e., the place where a lawsuit should be heard. Unlike the term jurisdiction, which implicates the power of a court to adjudicate, venue denotes only the place of adjudication. In a case under Title 11 of the United States Code, venue is the place of a bankruptcy filing, i.e., the situs of the court charged with adjudicative and administrative responsibilities in the context of a bankruptcy case. The purpose of any venue statute is to provide a judicial forum locus that meets the legitimate needs of litigants or parties and assures, to the extent possible, the efficient and proper functioning of our courts.

■ The venue statute governing bankruptcy cases, 28 U.S.C. § 1408, gives wide latitude to a prospective debtor. Under 28 U.S.C. § 1408 there are four alternative, broad based predicates upon which a person or entity can select the district of a bankruptcy filing, i) domicile, ii) residence, iii) location of principal place of business, or iv) location of principal assets. These wide options seed potentiality for abuse in the nature of forum shopping. Thus, while a debtor's (or plaintiff's) selection of venue is entitled to some deference, it is obviously not controlling. As the late Justice Jackson pointed out in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947), venue statutes usually give a plaintiff a choice of courts "[b]ut the open door may admit those who seek not simply ·justice but perhaps justice blended with some harassment." In order to curb misuse or misapplication of broad federal

venue provisions, Congress enacted change of venue statutes. The change of venue statute relating to bankruptcy cases is 28 U.S.C. § 1412, which statute reads as follows:[7]

> A district court may transfer a case or a proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

Implementing this statute is Bankruptcy Rule 1014(a), which Rule, in relevant part, provides as follows:

> (1) If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, ... the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

Under 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a)(1), a properly venued bankruptcy case may be transferred in the interest of justice or for the convenience of the parties. That venue of Pinehaven's Chapter 11 case in the Eastern District of New York is technically proper under 28 U.S.C. § 1408, as Sunburst readily concedes, does not preclude transfer to another district.

■ A transfer of venue under 28 U.S.C. § 1412 lies within the sound discretion of the bankruptcy court. *In re Pavilion Place Assocs.,* 88 B.R. 32, 35 (Bankr. S.D.N.Y.1988); *In re Eleven Oak Tower Ltd. Partnership,* 59 B.R. 626, 628 (Bankr. N.D.Ill.1986). The party moving for change of venue bears the burden of proof and that burden must be carried by a preponderance of the evidence. *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.),* 896 F.2d 1384, 1390 (2d Cir.1990); *In re Legend Indus. Inc.,* 49 B.R. 935, 938

---

**6.** Wolpert now opines that the Motel is worth somewhere between $1.1 million and $1.4 million; in its Chapter 11 petition, the Debtor estimated the value of the Motel at $1.5 million. The Sunburst indebtedness secured by the Motel is in excess of $2 million.

**7.** The general change of venue statute applicable in nonbankruptcy cases is 28 U.S.C. § 1404(a).

That statute is similar in language to 28 U.S.C. § 1412 and provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

(Bankr.E.D.N.Y.1985). There is no litmus test or hard and fast rules offering precise guidance for transfer of venue and the bankruptcy courts are left to a case by case determination based upon all relevant factors. *In re Manville Forest Prods. Corp.*, 896 F.2d at 1391 (discretionary authority in adjudicating motions to transfer venue must be applied on an individualized case by case basis); *In re Developers of Caguas, Inc.*, 26 B.R. 977 (Bankr. E.D.N.Y.1983) (each case involving requests to transfer venue "must stand on its own facts").

### B. Convenience of the Parties

■ Courts have fashioned various factors that must be weighed in the exercise of the discretional determination of whether or not to grant a motion to transfer venue. The factors to be employed in determining the "convenience for the parties" were set forth in the seminal case of *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., (In re Commonwealth Oil Refining Co.)*, 596 F.2d 1239, 1247 (5th Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980), as follows:

1) proximity of creditors of every kind to the court;

2) proximity of the bankrupt (debtor) to the court;

3) proximity of the witnesses necessary to the administration of the estate;

4) location of the assets; and

5) the economic administration of the estate.

The only factor which possibly supports *retention of venue in this district* is the location of the Debtor. The sole asset is in Southhaven, Mississippi. The Debtor's business revolves around Mississippi property which is managed by people located in or near Southhaven. Books, records, operating bank accounts are maintained locally. The local manager prepares annual budgets. The local manager also prepares monthly operating reports which are filed more than one thousand miles away from this district. Sunburst, a Mississippi bank and holder of 85% of the debt, wants the case transferred. All other creditors are located in or near Mississippi, or certainly in far greater proximity to Mississippi than this district. Indeed, all creditors, including Parnell, who have made known their views support transfer to Mississippi.[8]

An appraisal will be required to establish the Motel's value. Such valuation may arise in the context of adequate protection aspects of a lift stay motion, a sale of the Motel or fixing the amount of Sunburst's secured claim under 11 U.S.C. § 506(a).[9] It is inevitable that Mississippi appraisers will be selected, as such persons would be most familiar with market values in the region. In any proceedings to value the Motel, the testimony of local appraisers, brokers, sales agents, and other persons familiar with local conditions, will be highly probative. Additionally, in the event a sale of the Motel becomes necessary or desirable, inspections and title searches will have to be conducted in Mississippi.

If a plan of reorganization is proposed not involving a sale of the Motel, a major issue will be whether cash flows from the Motel will be adequate to pay debt service to Sunburst and other lenders.[10] The valid-

---

**8.** The Debtor's limited partners reside in or about the New York metropolitan area and support the Debtor's opposition to transfer of venue. They have no role in management; nor is it anticipated that funding for a reorganization plan will come from them. Moreover, the concern for the limited partners, who are holders of equity interests, is less than for creditors where, as here, the Debtor admits its insolvency. *In re Bell Tower Assocs.*, 86 B.R. 795, 801 n. 6 (Bankr.S.D.N.Y.1988).

**9.** 11 U.S.C. § 506(a) provides for a bifurcation of a secured claim into a secured and unsecured portion. The claim is secured to the extent of the collateral's value and unsecured as to the remainder. The argument of the Debtor that appraisals are not necessary, because it does not dispute that the Debtor lacks equity in the property, is wrong.

**10.** 11 U.S.C. § 1129(a)(11) contains the feasibility requisite for confirmation of a reorganization plan. This provision requires that before a bankruptcy court confirms a reorganization plan, it must be satisfied that confirmation is not likely to be followed by the debtor's liquidation, or the debtor's need for further financial rehabilitation.

ity of the Debtor's projections and estimates will depend, on among other things, the competitive position of the Motel against the Comfort Inn and other local motels.[11] In that regard, the testimony of local persons familiar with business conditions and competition in the area will be highly probative.

■ The most important of the factors identified by the Fifth Circuit in the *Commonwealth Oil Refining Co.* case is whether the requested transfer would promote the economic and efficient administration of the estate. *In re Commonwealth Oil Refining Co.*, 596 F.2d at 1247. This factor is not independent of the other factors since proximity of the parties, witnesses and location of the assets certainly affects the economy and efficiency of administration. This final criterion, as pointed out by Chief Judge Duberstein, is "actually a summary of the previous four [factors]." *In re Consolidated Pier Deliveries, Inc.*, 34 B.R. 327, 329 (Bankr. E.D.N.Y.1983). There is ample support for the proposition that a real estate case like Pinehaven, can be most efficiently and economically administered in the bankruptcy court closest to its major asset, and that the Chapter 11 case can best unfold there. *See In re Pavillion Place Assocs.*, 88 B.R. 32; *In re 19101 Corp.*, 74 B.R. 34 (Bankr. D.R.I.1987); *In re Nantucket Apartments Assocs.*, 80 B.R. 154 (Bankr.E.D.Mo.1987); *In re Eleven Oak Tower Ltd. Partnership*, 59 B.R. 626; *In re Pickwick Place Ltd. Partnership*, 63 B.R. 290 (Bankr.N.D.Ill. 1986); *In re Old Delmar Corp.*, 45 B.R. 883 (Bankr.S.D.N.Y.1985); *In re Developers of Caguas, Inc.*, 26 B.R. 977; *In re Landmark Capital Co.*, 19 B.R. 342 (Bankr.S.D.N.Y.1982), *aff'd sub nom., Landmark Capital Co. v. North Central Dev. Co. (In re Landmark Capital Co.)*, 20 B.R. 220 (S.D.N.Y.1982); *In re Greenridge Apartments*, 13 B.R. 510 (Bankr.D.Haw. 1981). The Debtor has presented no compelling reason to keep this real estate investment partnership case in this district,

far from the site of its single asset and its creditors.

The Debtor insists that because Pinehaven's major decisions and general supervision emanates from Lake Success, New York, the case should be retained in this district. This argument is not persuasive. The Debtor exaggerates the nexus of the Eastern District of New York to the administration of its Chapter 11 case. The role of Wright, the local day-to-day manager of the Motel, is unjustifiably minimized. The Debtor has already consulted with John Crabb, a local appraiser in Memphis, Tennessee. The Debtor is already represented by Martin, Tate & Morrow, a Memphis, Tennessee law firm, with respect to matters pertaining to the Motel's financial difficulties. Even the Debtor's counsel in this district is a law firm, Schreiber & Associates, whose principal offices are located in Salem, Massachusetts, far from Brooklyn, New York.

The Debtor's key player is Wolpert. It is he who determines policy, makes the major decisions and performs the general oversight functions on behalf of the Debtor. Wolpert is a much travelled real estate entrepreneur and consultant. He comes to the Memphis area on a fairly regular basis. There is no reason to think that Wolpert will not continue such trips during the pendency of the Chapter 11 case and he could, in many instances, couple his regular trips with Chapter 11 matters. Whatever inconvenience might be experienced is outweighed by all the other considerations favoring transfer of venue. Indeed, even if this Chapter 11 case was to stay in the Eastern District of New York, Wolpert would be required to spend time in Mississippi and Tennessee for the purpose of negotiating with creditors, as well as overseeing the Motel, its operations and superintending a possible sale.

C. Interest of Justice

■ It should be observed that 28 U.S.C. § 1412 authorizes transfer of venue "in the interest of justice *or* for the conve-

---

11. The Motel is situated near an interstate highway and, within a twenty-five mile radius, each

of the moderately-priced national chains is represented.

nience of the parties." (Emphasis Added). The disjunctive "or" indicates that the "interest of justice" is a separate component of a § 1412 transfer of venue analysis. As a practical matter, in most cases,—and the Pinehaven Chapter 11 case is no different in that regard—, if the convenience of the parties and witnesses will be served by transfer, it usually follows that justice will also be served by transfer.

The interest of justice component of § 1412 is an elusive term not easily amenable to definition. The Congress provided no compass for the meaning to be ascribed to "interest of justice," which phrase is more easily felt than precisely defined. It is so in this case. An interest of justice venue transfer analysis encompasses, among other things, inquiry as to the forum which facilitates the efficient, proper and expeditious functioning of the courts. Although vague, this inquiry would include looking into the desirability of having a judge familiar with applicable law hear and determine issues arising in the case. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir.1989); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir.1986); *In re Landmark Capital Co.*, 19 B.R. at 348; *Vaughn v. American Basketball Ass'n*, 419 F.Supp. 1274, 1279 (S.D.N.Y.1976).

The state of title to and interests in the Motel, and the property of which the Motel forms a part, involve documents which are voluminous, complex, unclear and subject to significant questions. The efficacy of deeds, secured instruments and leases pertaining to the Debtor's property will be governed by, and interpreted under, the laws of the State of Mississippi. If the property is to be appraised, those performing the task will be real estate experts familiar with the real estate conditions and markets in Mississippi. A Mississippi bankruptcy court could address the inevitable questions of Mississippi law and evaluate appraisals of Mississippi real property with greater ease, familiarity, and thus efficiency, than can be reasonably expected from a New York bankruptcy court. Further, the Mississippi bankruptcy court is in a better position to render accurate and proper decisions on these questions. As Judge Goetz so aptly observed:

> Requiring [Mississippi] experts to come to Brooklyn, New York to educate a Brooklyn bankruptcy judge as to the value of [Mississippi] property will impose unnecessarily great expense ..., and will serve neither the interest of justice, nor the convenience of the parties.

*In re Developers of Caguas, Inc.*, 26 B.R. at 980.

The Debtor contends that issues of Mississippi law should not arise because Sunburst has title insurance. The Debtor is in error for a number of reasons. First, with respect to the title issues themselves, Sunburst has an interest in being assured that its deed of trust secures an interest over which the mortgagor has a marketable title. If Sunburst is permitted to foreclose, marketable title is more valuable to it than a potential claim under a title insurance policy. Second, there is a parcel used by the Debtor in its business which is not covered by the title insurance policy. Finally, and most importantly, title is hardly the only issue as to which familiarity with Mississippi law is necessary.

This Chapter 11 case involves a single asset debtor; that asset is the Motel in Southhaven, Mississippi. Mississippi has the most substantial connection with an interest in the administration of an estate consisting of property localized in that state. The Debtor has no employees, and is staffed and managed locally in the Southhaven–Memphis area. Venue in this district was chosen for the personal preference and convenience of one man, Alan Wolpert, and also to make this Chapter 11 case more burdensome to creditors and other interested parties, particularly the party with the largest claim, Sunburst Bank. An important consideration informing the Debtor's selection of venue for Pinehaven's Chapter 11 filing was not the convenience of the Debtor and its creditors, but Wolpert's fear that a Mississippi filing would diminish his ability to effectively carry out his many other business involvements. Obviously, accommodating Wolpert's personal

convenience at the expense of creditors and other interested parties does not advance the "interest of justice." Having chosen to purchase a Motel in Mississippi, the Debtor cannot be heard to complain that its Chapter 11 effort is being transferred to that location.

In sum, while it is true, as Pinehaven points outs, that a debtor's choice of venue should not be lightly disturbed, there is ample reason to do so here.

III. *Conclusions*

1. This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The motion to change venue constitutes a core matter under 28 U.S.C. § 157(b)(2)(A).

2. The movant, Sunburst Bank, has sustained its burden of proof to support a change of venue pursuant to 28 U.S.C. § 1412.

3. The motion of Sunburst Bank is granted and, for the convenience of the parties and in the interests of justice, this Chapter 11 case shall be transferred to the United States Bankruptcy Court for the Northern District of Mississippi.

AN ORDER IN ACCORDANCE WITH THIS OPINION IS BEING ENTERED SIMULTANEOUSLY HEREWITH