In re MELGAR ENTERPRISES, INC., Debtor.

Bankruptcy No. 191–18688–260.

United States Bankruptcy Court, E.D. New York.

May 12, 1992.

Shaw, Licitra, Parente, Esernio & Schwartz, P.C. by J. Stanley Shaw, Eric Brown, Garden City, N.Y., for debtor.

Katten, Muchin & Zavis by Jeff Marwil, Mark K. Thomas, Chicago, Ill., for Amber Shires Ltd. Partnership.

Lerner, Gorden & Hirsch, P.C. by Marc Scott Kallman, Carle Place, N.Y., for Panagra Properties, Inc.

U.S. Trustee by Douglas Spelfogel, Garden City, N.Y.

## DECISION ON MOTION TO TRANSFER VENUE TO THE EASTERN DIVISION OF THE NORTHERN DISTRICT OF ILLINOIS

CONRAD B. DUBERSTEIN, Chief Judge.

Melgar Enterprises, Inc. ("Melgar" or the "Debtor"), the debtor herein, filed a voluntary petition for relief under Chapter 11 in this Court on December 31, 1991. Its sole secured and largest creditor, Amber Shires Limited Partnership ("Amber Shires") has moved this Court to transfer the venue of this case to the Bankruptcy Court for the Eastern Division of the Northern District of Illinois pursuant to 28 U.S.C. § 1412 and Rule 1014(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Fed.R.Bankr.P.").[1] For the reasons hereinafter set forth the motion is denied.

1. 28 U.S.C. § 1412 states:

A district court may transfer a case or proceeding under title 11 to a district court for

## FACTS

The Debtor is a New York corporation engaged in the business of acquiring and developing real estate. Its principal place of business is located in Mineola, Nassau County, New York, which is in the geographical confines of this District. Its principals are Gary Melius ("Melius") and Melvin Ditkowich ("Ditkowich"), both of whom reside in the Metropolitan New York area. Its sole asset, aside from some office furniture and records located in its Mineola office, consists of approximately 212 acres of land (the "real property" or "property") located in Lermont, Cook County, Illinois, which is in the area encompassed by the Eastern Division of the Northern District of Illinois. The property is unimproved and vacant except for a few single-family houses that pre-date the Debtor's acquisition of the property. Pursuant to an agreement between the Debtor and Amber Shires, rentals from the houses are collected by an escrow agent amounting to about $2,650 per month. The property lacks electricity, water and sewerage facilities, roads and necessary utilities. The 1988 real estate taxes were paid by Amber Shires to avoid a tax sale, 1989 taxes were paid by the Debtor, 1990 taxes are delinquent, and no payments were made for 1991 taxes.

Title to the property is held by the Debtor by reason of its 100% beneficial interest in a certain land trust. The property is comprised of two contiguous parcels of real estate referred to as the "DePaul Property" and the "Kasa Property".

Amber Shires is an Illinois limited partnership with its offices in Cook County, Illinois. It holds mortgages affecting the parcels. It instituted an action in the Circuit Court of Cook County, Illinois, to foreclose the mortgages and in which a summary judgment was entered in its favor. On October 2, 1991 it recovered a judgment totalling $6,955,286.40, and a Sheriff's sale was scheduled for January 9, 1992 after the Debtor's right of redemption had expired on January 2, 1992. However, upon the initiation by the Debtor of this Chapter 11 case on December 31, 1991, the sale was stayed pursuant to § 362 of the Bankruptcy Code.

Oral argument on Amber Shires' motion to transfer venue was heard by this Court on March 10, 1992. It also read and considered the affidavit of Amber Shires' Secretary, Pamela Robb, the affidavit of Robert E. Gallagher, the President of its corporate general partner, as well as various exhibits consisting among others of the decision of the Illinois Court which granted Amber Shires' motion for summary judgment, and which denied counterclaims submitted by Melgar. This Court gave equal consideration to the Debtor's response and memorandum of law in support of its objections to the instant transfer motion. The motion was adjourned for the purpose of examining into the validity and extent of an alleged claim of an entity known as Panagra Properties, Inc., ("Panagra") located in the within District which the Debtor had listed in its schedules of liabilities as an unsecured creditor in excess of $500,000 and which the Debtor contended was one of the many reasons to keep this case here.

Prior to the adjourned hearing Amber Shires submitted a Supplemental Statement in support of its transfer motion wherein it denied that Panagra had a claim. It further referred to an action instituted by it against Panagra in the Circuit Court of Cook County in Illinois wherein it claimed that Panagra breached its duties and obligations under an agreement involving the property which is the subject of the within issue. The Supplemental Statement further asserted that in the event it is determined that Panagra has a claim against the Debtor, Amber Shires would be subrogated

another district, in the interest of justice or for the convenience of the parties.

Fed.R.Bankr.P. 1014(a)(1) states:

Cases Filed in Proper District. If a petition is filed in a proper district, on timely motion of a party in interest, after hearing on notice to the petitioners, the United States Trustee, and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

to its rights to such claim. The hearing on the motion was thereupon again adjourned to April 10, 1992 in order for this Court to hear testimony proffered by both the Debtor and Amber Shires with respect to all of the issues involved as well as to examine into the claims, if any, of Panagra. The Court reserved decision on the motion after it informed counsel for Panagra who appeared at the hearing that if Panagra had a claim, a formal Proof of Claim should be filed together with documents in support thereof.

On April 13, 1992, Panagra filed a proof of claim for $566,040.33. By letter dated April 24, 1992 its attorneys mailed to this Court additional documents which it contended relate to the claim. As a result of this Court's learning from said attorneys on May 5, 1992 that they had not provided Amber Shires' attorneys copies of the documents, this Court directed that same be "faxed" to said attorneys forthwith. On May 8, 1992 the Clerk of this Court received from Amber Shires' attorneys the following documents dated May 7, 1992: (1) A statement of Amber Shires in response to said letter of the attorneys for Panagra dated April 24, 1992, and (2) Objection to the claim filed by Panagra. In rendering the within decision this Court has considered said claim, the documents relating thereto, Amber Shires' response, and its objection to the claim.

### FACTS TO BE CONSIDERED IN DETERMINING THE ISSUE AS TO THE PROPER VENUE

As is usual in all situations where the question of proper venue arises, the Court is required to examine into many factors that contribute to the ultimate decision. These generally fall into several categories which the Court must look to in arriving at a conclusion.

■ The first area of concern is whether the petition for relief was filed in the prop-

er district. 28 U.S.C. § 1408 governs the conditions to be met which, among other things, provide that the location of the principal place of business will satisfy the venue requirement.[2] There is no dispute but that the Debtor's place of business is in the Eastern District of New York and hence this Court finds that the filing of the petition in this District was proper and that the seminal issue of proper venue has been met. Notwithstanding the fact that this Court finds that the petition was properly filed within this District in conformity with 28 U.S.C. § 1408, by reason of the pending motion, this Court is required to examine into other factors to be considered in making a determination and passing upon such motion.

A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties. 28 U.S.C. § 1412. *See infra* note 1. Moreover, Fed.R.Bankr.P. 1014(a)(1) provides that if a petition is filed, whether in a proper or improper district, on timely motion of a party in interest, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties. *Id.* Therefore, "while a debtor's ... selection of venue is entitled to some deference, it is obviously not controlling." *In re Pinehaven Assocs.*, 132 B.R. 982, 987 (Bankr.E.D.N.Y.1991).

■ The burden of proof relating to the transfer rests with the moving party. *In re Consolidated Pier Deliveries, Inc.*, 34 B.R. 327, 328 (Bankr.E.D.N.Y.1983). It must demonstrate by a fair preponderance of the evidence that a transfer of the case from one district to another is warranted. *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1390–91 (2d Cir.1990); *In re Landmark*

---

**2.** 28 U.S.C. § 1408 states in pertinent part:
... a case under title 11 may be commenced in the district court for the district—
(1) in which the domicile, residence, principal place of business in the United States, or

principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement....

*Capital Land Co.,* 19 B.R. 342, 344 (Bankr. S.D.N.Y.1982).

■ The criteria employed in determining whether a transfer of venue based on the convenience of the parties and the interest of justice is appropriate as set forth in *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.),* 596 F.2d 1239, 1247 (5th Cir.1979); *cert. denied,* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980) (interpreting former Bankruptcy Rule 116, the predecessor of Fed. R.Bankr.P. 1014(a), includes the following: (1) proximity of creditors of every kind to the court, (2) the location of the debtor's assets, (3) the proximity of the debtor to the court, (4) proximity of witnesses necessary to the administration of the estate, (5) the economic administration of the estate). *In re Standard Tank Cleaning Corp.,* 133 B.R. 562, 566 (Bankr.E.D.N.Y.1991); *Pinehaven Assocs.,* 132 B.R. at 988–89; *In re Uslar,* 131 B.R. 22, 23 (Bankr.E.D.Pa.1991); *In re Suzanne De Lyon, Inc.,* 125 B.R. 863, 868 (Bankr.S.D.N.Y.1991); *In re Portjeff Development Corp.,* 118 B.R. 184, 193 (Bankr.E.D.N.Y.1990); *Consolidated Pier Deliveries,* 34 B.R. at 328; *In re Developers of Caguas, Inc.,* 26 B.R. 977, 980 (Bankr.E.D.N.Y.1983); *In re Dock of the Bay, Inc.,* 24 B.R. 811, 815–16 (Bankr. E.D.N.Y.1982).

## (1) THE PROXIMITY OF CREDITORS OF EVERY KIND TO THE COURT

Amber Shires is located in Illinois, and is the principal and largest creditor of the Debtor, with a secured claim in excess of $6,950,000.

The Debtor lists 16 unsecured creditors in its schedules attached to its petition for relief, 8 of which have Illinois addresses totalling $142,740.04. The remaining 8 totalling a mere $7,050.41 consist of 5 in New York, 1 in Michigan, 1 in California and 1 in Washington.

In response to the motion to transfer venue, the largest unsecured creditor of the Debtor, Seyfarth, Shaw, Fairweather & Geraldson, attorneys located in Chicago who represented the Debtor there and who are listed in the schedules as a creditor in the sum of $120,000 out of the total of $142,740.04, have indicated that they support the Debtor's opposition to the motion, preferring that the case remain here in New York in order to avoid administrative expenses arising out of the need to retain local Illinois counsel, travel expenses occasioned by the appearance of the Debtor's principals in Illinois and finally, the fact that the principals will be required to devote most of the time performing their duties on behalf of the Debtor here in New York.

The Debtor argues that Panagra's status as a creditor and its location in New York carries considerable weight in passing upon the venue issue insofar as the proximity of creditors is concerned. As has already been noted, on April 13, 1992 Panagra filed a proof of claim for $566,040.33. The statement attached to the claim form states that it is a "combined claim amount which is in dispute as Panagra Properties, Inc. and 2301–01 Emmons Avenue Corp. ("Emmons") are both Plaintiffs in an action against Melgar Enterprises, Inc. in the New York State Supreme Court in and for the County of Nassau." The quote goes on to state, "As such, the amounts due to each corporation may or may not be in dispute at this time. Therefore, the total claim set forth herein for both Panagra Properties, Inc. and 2301–01 Emmons Avenue Corp. which have the same offices for both corporations, is $566,040.33 in total." A copy of the Complaint and Amended Answer in the aforesaid action were furnished to this Court several days after the claim was filed. An examination of the same reveals that the action was commenced in April of 1990 and that the defendants are Melgar Industries, Inc. and Gary Melius. The Complaint makes reference to an agreement entered into between Melgar and Emmons in November of 1989 whereby Emmons was granted an irrevocable option to convert a certain promissory note into 25% of the common stock of Melgar, that on December 26, 1989 Emmons exercised the option but that Melgar failed to deliver the

stock and other documentation required by the agreement. The agreement also provided that in the event of Melgar's failure of performance, Melius would be liable to pay the sum of $566,040.33 as Liquidated Damages, and that Melius failed to pay that sum. The Complaint seeks relief solely against Melius for the $566,040.33. No judgment was sought against Melgar.

In the Amended Answer, both defendants Melgar and Melius seek the State Court's interpretation of the documents of November 30, 1989 and December 26, 1989, as well as a later document dated March 7, 1990. In addition thereto, the Amended Answer sets forth a number of affirmative defenses, the most important of which reflects that no judgment was being sought as against Melgar.

Thus, the pleadings in the action in the Nassau County Court referred to in the claim for $566,040.33 clearly indicates that Panagra and/or Emmons have a claim against Melius and not as against Melgar, the debtor herein. Whether or not Panagra does have a claim against Melgar may depend on other transactions between them. At the time counsel provided this Court with the documents in support of the claim on April 13, 1992, it also received a copy of a contract of sale affecting property in Lermont, Illinois, which apparently is the same property hereinabove referred to, which may or may not have given rise to a claim. Consequently, whether or not Panagra has a claim against the Debtor has yet to be determined, although it is abundantly clear that the pleadings in the Nassau County action referred to in the filed claim do not support such a claim against the Debtor.

In light of all of the foregoing facts relating to the claims of creditors, this Court finds that except for the proximity of Amber Shires to the Bankruptcy Court in Chicago, the facts with respect to the proximity of all other creditors fail to support a finding that the case belongs in Illinois and not in New York.

### (2) LOCATION OF THE DEBTOR'S ASSETS

 That the Debtor's major asset is located in Illinois is certainly undisputed. However, its mere location there does not warrant a transfer of venue to the Bankruptcy Court in Illinois.

The property is vacant and unimproved. The Debtor is not required to be in attendance there as would be the case if the land were developed and needed the physical presence of the Debtor's representatives in order to oversee the management and preservation of such buildings as would be located there. It was also testified to during the course of the hearings that the Debtor's principals have spent very little time on the property in the past and that they will not be expected to be there to any great extent in the future.

By reason of the foregoing, the location of the Debtor's property does not support the movant's argument that such location supports a removal of venue.

### (3) THE PROXIMITY OF DEBTOR TO THE COURT

The Debtor's principals and its headquarters are in this District. It conducts its business here. Its books and records are maintained here. It has no offices in Illinois. The Court is further aware of the fact that the Debtor's principal, Gary Melius, is also a principal of Castle Ventures, Ltd., another debtor whose Chapter 11 proceedings are pending in this Court. In that case the debtor is engaged in contentious litigation and proceedings involving three mortgages affecting two buildings located in the Metropolitan area. Melius has spent considerable time in this Court in connection with that matter and from this Court's own personal knowledge, is expected to be in attendance at many more hearings to come. In addition, Ditkowich, the Debtor's other principal, has also appeared before this Court in connection with that case. There is no question that from the definite litigious nature of the issues presented in the Castle Ventures case, Melius's continued presence here in that case would undoubtedly interfere with his need to appear in the Illinois Bankruptcy Court if venue of this case were transferred there. Thus, the proximity of the Debtor and its princi-

pals to this Court supports the Debtor's opposition to this transfer motion.

### (4) PROXIMITY OF THE WITNESSES NECESSARY TO THE ADMINIS- TRATION OF THE ESTATE

Inasmuch as the representatives of the Debtor located here in New York will be required to testify as to matters relating to this case, it is apparent that it will be more convenient and certainly less expensive for them to be here than if they were to be required to attend in the Bankruptcy Court in Illinois. On the other hand, as was pointed out by Amber Shires in its documents in support of its motion, hearings relating to the value of the property undoubtedly will require witnesses familiar with Illinois real estate and its financing, to testify as to the value of the property and the costs necessary to develop it. Amber Shires has further made it clear that it will initiate such hearings and will press for evidence affecting the same. It further contends that the Debtor's admitted plans to maximize the value of the property will require significant involvement and action by local governmental authorities, including issuance of construction and plat permits, approval of engineering studies, sales development and financing efforts all of which it claims, will require the Debtor to spend most of its time in Illinois. In response, the Debtor claims that valuation hearings and appraisals can be resolved here in this Court.

It is to be noted that in many of the single asset Chapter 11 cases which this Court has administered, appraisers have been called in to evaluate property located throughout the country without causing undue problems nor serious inconvenience for the witnesses involved. The Debtor has also indicated that whatever must be done in meeting the requirements of local Illinois governmental agencies can be accomplished through its representatives there who will be able to handle those matters without difficulty whenever the occasion arises. This Court fully recognizes that Amber Shires' representatives themselves are certainly closer to the Bankruptcy Court in Chicago than they are to this

Court here in Brooklyn. This Court also notes that the attorneys for Amber Shires have law offices here at 40 Broad Street in New York City and that as a matter of fact, the legal documents submitted by that law firm bear that address. Thus, Amber Shires is represented by counsel here in New York although this Court is aware of the fact that counsel's main office is located in Chicago, Illinois, from whence comes to this Court the attorney representing that office during the course of the hearings on the instant motion.

The Debtor has arranged with an entity known as D.A. Kelly Planning and Developing Corp. ("Kelly") located in Huntington, New York, to work on financing property through potential investors as appears from a letter dated April 7, 1992 which had been submitted to this Court during the course of the hearings. Kelly is purportedly gathering market information in an effort to assemble and acquire the necessary capital to structure a meaningful reorganization for consideration in this case. Kelly's location here in New York is parenthetically another reason why the proximity of witnesses favors the retention of venue here.

By reason of the foregoing, this Court is not led to conclude that the proximity of witnesses requires that this case be transferred to the Bankruptcy Court in Illinois.

### (5) THE ECONOMIC ADMINISTRATION OF THE ESTATE

Of all of the factors to be considered in determining venue, perhaps the economics of administration of the estate is one of the most important. *In re Garden Manor Assocs., L.P.,* 99 B.R. 551 (Bankr.S.D.N.Y. 1988); *In re HME Records, Inc.,* 62 B.R. 611 (Bankr.M.D.Tenn.1986); *In re One-Eighty Investments, Ltd.,* 18 B.R. 725 (Bankr.N.D.Ill.1981). It is apparent that the Debtor's prospects for a successful and economical administration, as well as its ability to effectuate a plan of reorganization, will depend on its ability to raise new capital and effectuate the satisfaction of Amber Shires' claim in accordance with provisions of the Bankruptcy Code. During the course of the hearings, Ditkowich,

one of the principals of the Debtor, testified that he had invested approximately $3,000,000 toward rehabilitating his affairs, dedicated principally in the development of the property. This Court is satisfied that the principals are endeavoring to protect and preserve their investments by enhancing the value of the property to the extent of developing the land to accommodate substantial building construction which is intended to generate sufficient income and profit to warrant a reorganization.

This Court is also familiar with the fact, as evidenced by the moving papers and affidavits as well as testimony of Mr. Gallagher representing Amber Shires, that it too has plans of developing the property. As was pointed out by Mr. Gallagher, Amber Shires is also in the business of developing real estate. It is thus clear to this Court that there are competing interests as between Amber Shires and the Debtor as to which of the two should be permitted to go forward with those plans. The Debtor should be given an opportunity to proceed in that direction, at least for a reasonable time so as to enable it to demonstrate to this Court that it can do so. If it cannot accomplish that end by means of a meaningful plan of reorganization soon, it is abundantly clear that Amber Shires will not stand by without seeking to lift the stay as provided for by § 362(d) of the Bankruptcy Code so as to go forward with its foreclosure, or even seek a dismissal of the case.

There is no question but that all matters and issues in connection with this Chapter 11 case can very well be handled by the extraordinarily capable Bankruptcy Judges in Chicago. Certainly in light of the heavy caseload that this Court has been experiencing, the transfer of this case there would be most welcome. Mindful of a popular song of yester-year which went, "I don't want her, you can have her, she's too fat for me", I could in this case adopt an appropriate parody, "I don't want it, you can have it, its too much for me." However, notwithstanding that this Court would be benefitted by such transfer, the true administration of justice does not warrant the relief that would flow to this Court if such transfer were made.

By reason of all of the foregoing factors carefully considered by this Court, it is of the opinion that Amber Shires has not met its burden of proof that venue is improper, that a preponderance of evidence warrants this Court to retain venue here in the Eastern District of New York in the interest of justice and for the convenience of the parties. Accordingly, the motion to transfer venue to the Northern District of Illinois is denied.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.