## In re SETON CHASE ASSOCIATES, INC., Debtor.

### Bankruptcy No. 192–13820–260.

United States Bankruptcy Court, E.D. New York.

June 4, 1992.

**3**

Hirsch & Westheimer, P.C., by Michael J. Durrschmidt, Houston, Tex., for F.D.I.C.

Backenroth & Grossman by Abraham Backenroth, Mark Frankel, New York City, for debtor.

U.S. Trustee by Douglas Spelfogel, Garden City, N.Y.

## DECISION ON MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF TEXAS

CONRAD B. DUBERSTEIN, Chief Judge.

Seton Chase Associates, Inc. ("Seton Chase" or the "Debtor"), the debtor and

debtor-in-possession, filed a voluntary petition for relief under Chapter 11 in this Court on May 4, 1992. Its largest secured creditor, the Federal Deposit Insurance Corporation (the "FDIC"), has moved this Court to transfer the venue of this case to the Bankruptcy Court for the Southern District of Texas pursuant to 28 U.S.C. § 1412 and Federal Rules of Bankruptcy Procedure (the "Fed.R.Bankr.P.") 1014(a)(1).[1] For the reasons hereinafter set forth, the motion is granted.

### FACTS

The Debtor is a Texas corporation that owns and operates a residential real estate development, commonly known as the Seton Chase Apartments (the "Property"), located at 7703 Seton Lake Drive, Houston, Texas. The 232 unit apartment complex is the Debtor's principal asset. The Property is managed by Productive Property Management, Inc. ("PPMI"), with its principal place of business at 7670 Wood Way, Suite 205, Houston, Texas.

In addition to the Texas location, the Debtor maintains an office at 280 Wallabout Street, Brooklyn, New York, within the offices of Park Lane Realty, which is in the geographical confines of this District. The President and owner of more than 20% of the voting securities of the Debtor, Chaim Berger, alleges that he directs the Debtor's operations out of this Brooklyn office. However, there is no telephone listing for the Debtor in Brooklyn.

On July 6, 1989, the Debtor, by and through its President, Chaim Berger, executed and delivered to the NCNB Texas National Bank (the "NCNB"), a Deed of Trust Note in the original principal amount of $5,972,186.72 (the "Note"). The Note is secured by a vendor's lien in favor of

---

1. 28 U.S.C. § 1412 states:
   A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.
   Fed.R.Bankr.P. 1014(a)(1) states:
   Cases Filed in Proper District. If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

**4**

NCNB on the Property. The Deed of Trust is properly recorded in the official Public Records of Real property of Harris County, Texas, under the County Clerk's File No. M 227810.

On May 24, 1991, NCNB advised the Debtor that it had defaulted on the Note and demanded payment of all indebtedness evinced by the Note. On November 30, 1991, NCNB assigned the Note, Vendor's Lien, and Deed of Trust to the FDIC. As of the filing of the petition, the Debtor had not paid the Note.

The FDIC, on April 13, 1992, noticed the Property for a foreclosure sale to be conducted on May 5, 1992. On May 4, one day prior to the scheduled sale, the FDIC instituted an action in the United States District Court for the Southern District of Texas, seeking to enjoin the Debtor and PPMI from (i) depositing rents from the Property, (ii) disbursing rents to anyone other than the FDIC, and (iii) transferring rents already received to any other depository account of the Debtor other than a special account to be created by the Court. At 11:30 a.m. on that day, the Court entered a Temporary Restraining Order enjoining the Debtor from, among other things, using any rents generated from the Property. A hearing was scheduled for May 7 to determine whether the FDIC's motion for a preliminary injunction should be granted. The FDIC advised the Debtor that the Temporary Restraining Order had been entered, but did not notify the Debtor's bankruptcy counsel. At 4:08 p.m., the Debtor initiated this bankruptcy case by filing a petition for relief under Chapter 11 of the Bankruptcy Code in this Court, thereby staying the foreclosure sale of the Property. Two days later, the FDIC filed the instant motion to transfer venue of this case to the Bankruptcy Court for the Southern District of Texas.

## DISCUSSION

■ The first area of concern is whether the petition was properly filed in this District. *In re Melgar Enterprises, Inc.*, 140 B.R. 43, 45 (Bankr.E.D.N.Y.1992). 28 U.S.C. § 1408 governs the conditions to be met, which, among other things, provides that the location in which there is a pending Chapter 11 case concerning an affiliate of the debtor will satisfy the venue requirement.[2] § 101(2) of the Bankruptcy Code defines an "affiliate" as a:

> corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, ... by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor....

11 U.S.C. § 101(2)(B).

W.T. Associates is a debtor in a Chapter 11 case pending before this Court.[3] In an Agreed Stipulation of Facts and Admissibility of Exhibits, entered into by the attorney's for both the Debtor and the FDIC, it was agreed that the Debtor and W.T. Associates are affiliates as defined by § 101(2), in that Chaim Berger owns in excess of twenty percent of the voting securities of each company, and therefore, venue in the Eastern District of New York is proper pursuant to 28 U.S.C. § 1408(1). Accordingly, this Court finds that the filing of the petition in this District was proper and that the seminal issue of proper venue has been met.

Notwithstanding the fact that this Court finds that the petition was properly filed within this District in conformity with § 1408, by reason of the pending motion, this Court is required to examine other factors to be considered in making a determination and passing upon such motion. *Melgar*, 140 B.R. at 45.

---

**2.** 28 U.S.C. § 1408 states in pertinent part:
... a case under title 11 may be commenced in the district court for the district—
(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

**3.** W.T. Associates filed a petition for relief under Chapter 11 in this Court on March 3, 1992.

■ This Court may transfer a case or proceeding under title 11 to a court of another district, in the interest of justice or for the convenience of the parties. 28 U.S.C. § 1412. *See infra* note 1. Moreover, Fed.R.Bankr.P. 1014(a) provides that if a petition is filed, whether in a proper or improper district, on timely motion of a party in interest, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties. *Id.* Therefore, "while a debtor's ... selection of venue is entitled to some deference, it is obviously not controlling." *In re Pinehaven Assocs.*, 132 B.R. 982, 987 (Bankr.E.D.N.Y.1991).

■ The burden of proof relating to the transfer rests with the moving party. *In re Thomson McKinnon Securities, Inc.*, 126 B.R. 833 (Bankr.S.D.N.Y.1991); *In re Legend Industries*, 49 B.R. 935, 938 (Bankr.E.D.N.Y.1985); *In re Consolidated Pier Deliveries, Inc.*, 34 B.R. 327, 328 (Bankr.E.D.N.Y.1983). It must demonstrate by a fair preponderance of the evidence that a transfer of the case from one district to another is warranted. *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1390–91 (2d Cir.1990); *In re Landmark Capital Land Co.*, 19 B.R. 342, 344 (Bankr. S.D.N.Y.1982).

■ The criteria employed in determining whether a transfer of venue based on the convenience of the parties and the interest of justice is appropriate, as set forth in *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.)*, 596 F.2d 1239, 1247 (5th Cir.1979); *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980) (interpreting former Bankruptcy Rule 116, the predecessor of Fed. R.Bankr.P. 1014(a)), include the following: (1) the proximity of creditors of every kind to the court, (2) the location of the debtor's assets, (3) the proximity of the debtor to the court, (4) the proximity of witnesses necessary to the administration of the estate, and (5) the economic administration of the estate.[4] *Melgar,* 140 B.R. at 46; *In re Standard Tank Cleaning Corp.*, 133 B.R. 562, 566 (Bankr.E.D.N.Y.1991); *Pinehaven Assocs.*, 132 B.R. at 988–89; *In re Uslar,* 131 B.R. 22, 23 (Bankr.E.D.Pa.1991); *In re Suzanne De Lyon, Inc.*, 125 B.R. 863, 868 (Bankr.S.D.N.Y.1991); *In re Portjeff Development Corp.*, 118 B.R. 184, 193 (Bankr.E.D.N.Y.1990); *Consolidated Pier Deliveries,* 34 B.R. at 328; *In re Developers of Caguas, Inc.*, 26 B.R. 977, 980 (Bankr.E.D.N.Y.1983); *In re Dock of the Bay, Inc.*, 24 B.R. 811, 815–16 (Bankr. E.D.N.Y.1982).

### (1) THE PROXIMITY OF CREDITORS OF EVERY KIND TO THE COURT

■ The Debtor lists thirteen unsecured creditors in its petition for relief with claims aggregating $403,817, all of which have Texas addresses. The two secured creditors listed by the Debtor, American Properties with a claim of $67,887 and the NCNB with a claim of $5,972,187, which was assigned to the FDIC, are also located in Texas.

In response to the motion to transfer venue, Northwest Park M.U.D., Klein Independent School District and Harris County, who are listed in the petition as unsecured creditors in the sum of $396,788, out of total unsecured claims of $403,817, together with American Properties, Inc., the second lien holder on the Property with a

---

**4.** The Bankruptcy Court in *Commonwealth Oil Refining* also listed a sixth criterion used to evaluate whether a transfer of venue was warranted:

(6) The necessity for ancillary administration if [liquidation] should result.

*Commonwealth Oil Refining,* 596 F.2d at 1247. However, on appeal, the Court of Appeals for the 5th Circuit declined to confer great weight to this factor explaining that the "[a]nticipation of the failure of the Chapter [11] proceeding is an illogical basis upon which to predicate a transfer." *Id.* at 1248 (quoting *In re Fairfield Puerto Rico, Inc.,* 333 F.Supp. 1187, 1191 (D.Del. 1971)). This Court also finds that a structuring of this Chapter 11 proceeding with the anticipation that it will fail is inconsistent with the rehabilitative purpose of Chapter 11 of the Bankruptcy Code, and should not form the basis for a transfer of venue.

claim of $67,887, have indicated that they support the FDIC's motion to transfer the case to the Bankruptcy Court for the Southern District of Texas. According to the Creditor Matrix filed by the Debtor, these creditors, along with the FDIC, represent every creditor with a claim in excess of $2,000 and collectively represent 99.87% of all the claims against the Debtor.

## (2) LOCATION OF THE DEBTOR'S ASSETS

It is undisputed that the Debtor's principal asset is the Property located at 7703 Seton Lake Drive, Houston, Texas, and that all of the Debtor's income is generated from this property. Furthermore, all the real property taxing authorities who assess the property are located in Houston, Texas.

Any issues which arise regarding this asset can be handled more expeditiously in Texas. In addition, if a sale of the Debtor's assets became necessary, supervision would be easier in that district. *Standard Tank*, 133 B.R. at 568. Therefore, a consideration of the location of the Debtor's assets favors a transfer of this case to Texas.

## (3) THE PROXIMITY OF THE DEBTOR TO THE COURT

The Debtor is a Texas corporation. The Debtor's management and leasing agent are located in Houston, Texas. Although the Debtor's sole officer, Chaim Berger, maintains an office in Brooklyn, New York, there is no telephone listing for the Debtor in New York. Furthermore, all of the Debtor's day-to-day operations are supervised in Houston. The Debtor's rent rolls, occupancy reports, maintenance records, invoices and leases are maintained at the Property in Texas.

This Court finds unpersuasive the Debtor's argument that the location of its attorneys in this District is a factor for a determination of venue. The attorneys for the Debtor maintain that in the event these proceedings were to be transferred to the Southern District of Texas, the Debtor's attorneys would have to constantly travel to Texas, which could "strain the Debtor's financial condition," "reduce the distribution of funds to the Debtor's creditors,"

and "hamper the Debtor's efforts to reorganize." Debtor's Objection at 5. However, no evidence has been offered to support such an assertion, nor does this Court deem it a significant reason for maintaining venue here. *Standard Tank*, 133 B.R. at 567.

## (4) PROXIMITY OF THE WITNESSES NECESSARY TO THE ADMINISTRATION OF THE ESTATE

The location of the witnesses necessary for the administration of the estate further suggests that the proceeding be transferred to the Southern District of Texas. While the Debtor's sole officer and major shareholder is based in New York, the Debtor's managing agent, as well as all of the Debtor's employees, are located in Houston, Texas. Inasmuch as potential witnesses, particularly the management of the Debtor, its employees, its managing agent, and its creditors, are located in Texas, and the Debtor's books and records are also located there, "it simply makes more sense from the standpoint of judicial administration to deal with a [Texas] debtor and its largely [Texas] creditors in a [Texas] forum." *Consolidated Pier Deliveries*, 34 B.R. at 329.

## (5) THE ECONOMIC ADMINISTRATION OF THE ESTATE

The final factor addressed by the Fifth Circuit in *Commonwealth Oil Refining Co.* is whether a transfer of venue would foster the economic and efficient administration of the Debtor's estate. *Commonwealth Oil Refining*, 596 F.2d at 1247. This criterion is actually a summary of the previous four factors. *Consolidated Pier Deliveries*, 34 B.R. at 329. Since the value, condition, and use of the Debtor's principal assets are critical to the administration of this case, the administration can be most economically and efficiently conducted in Texas. Furthermore, since the principals of the Debtor, the majority of its creditors, its books and records, as well as most of the witnesses likely to testify are located in Texas, it logically follows that the economic and efficient administration of the Debtor's

estate would be best served by transferring this case to the Southern District of Texas. *See e.g., Consolidated Pier Deliveries,* 34 B.R. at 328.

By reason of all the foregoing factors carefully considered by this Court, the FDIC's motion to transfer the venue of these proceedings to the Southern District of Texas is granted.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.